**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA WILBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 24-331 |
| ) | |
| PYRAMID HEALTHCARE, INC., d/b/a ) | |
| SILVERMIST RECOVERY CENTER, and ) | |
| SCOTT BAILEY, both jointly and severally, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Lisa Wilbert's highly detailed, 179-paragraph Complaint in this matter alleges simple pregnancy-based discrimination and harassment, retaliation, and statutory leave of absence claims arising from an approximate 50-day window of time between April 10, 2023, and May 30, 2023, during which Ms. Wilbert's supervisor, Scott Bailey (a childhood friend of her long-term paramour), allegedly made inappropriate and offensive remarks regarding her pregnancy, and during which Ms. Wilbert was subjected to further discriminatory and retaliatory treatment culminating in the termination of her employment. (Docket No. 1). From the inception of this action, the parties, through counsel, have disagreed on the methodology and scope for discovery of electronically stored information ("ESI").

Presently before the Court is a Motion to Compel filed by Attorney Joshua P. Ward of J.P. Ward & Associates, LLC, on behalf of his client, Ms. Wilbert, along with a supporting Brief. (Docket Nos. 28, 29). Defendants Pyramid Healthcare, Inc., d/b/a Silvermist Recovery Center ("Pyramid"), and Mr. Bailey filed a Response in Opposition along with a supporting Brief. (Docket Nos. 30, 31). For the reasons set forth herein, this motion will be DENIED and Attorney

1

Ward and his law firm, J.P. Ward & Associates, LLC, will be ORDERED TO SHOW CAUSE why sanctions should not be imposed upon him, it, or them, jointly and severally.

### I. Applicable Rules and Legal Standards

The scope and limits of discovery are set forth principally in Rule 26(b)(1) of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides, in relevant part, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[1] For determining relevance, courts look to Federal Rule of Evidence 401, which states that information is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence"; and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Estate of Eckelberry v. CSX Transp., Inc.*, Civ. Action No. 18-365, 2019 WL 13199277, at *2 (W.D. Pa. Apr. 3, 2019). Even so, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). For determining proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "The parties and the court have the collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b)(1), Advisory Committee Note to 2015 Amendment. Rule 37 provides the procedural mechanisms for adjudicating discovery disputes. *See* Fed. R. Civ. P. 37. Determining the limits

---

[1] Rule 26(b)(1) was amended ten years ago, in 2015. *See Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 821 (W.D. Pa. 2016) (discussing the amendments to Fed. R. Civ. P. 26 over the years). At that time, the provision authorizing courts to order discovery of any matter "relevant to *the subject matter involved in the action*" was removed, while retaining the narrower formulation "relevant to *any party's claim or defense.*" *Id.* at 820-23 (comparing Fed. R. Civ. P. 26(b)(1)(2000) (emphasis added) and Fed. R. Civ. P. 26(b)(1) (2015) (emphasis added)). Also removed from the text of Rule 26(b)(1) was the "reasonably calculated to lead to the discovery of admissible evidence" standard. *Id.*

of discovery is within the sound discretion of the court and is case-specific. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019).

Plaintiff's Motion principally asserts disagreements concerning ESI discovery. Rule 26(b)(2)(B) provides specific boundaries on the discovery of ESI:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B). Then, Rule 26(b)(2)(C) further provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i) – (iii).

Mindful of the self-effectuating nature of discovery in federal courts[2] and its scope and limits as set forth above, the Federal Rules of Civil Procedure require parties to confer regarding

---

[2] Federal Rule of Civil Procedure 26(g) provides that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name . . . . [certifying] that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, [it is] . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and . . . [it is] neither unreasonable nor unduly burdensome or expensive . . . ." Fed. R. Civ. P. 26(g)(1). Moreover, "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or

planning for discovery. For instance, Rule 26(f) requires the parties to "confer as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f)(1). During such conferral, the parties must discuss, among other topics, "any issues about preserving discoverable information," and must also "develop a proposed discovery plan" for which the "attorneys of record . . . are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court . . . a written report outlining the plan." Fed. R. Civ. P. 26(f)(2). The discovery plan must state the parties' views and proposals on several topics delineated in Rule 26(f)(3)(A)-(F), including "issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C). These rules also empower the court to order the parties or attorneys to confer in person. Fed. R. Civ. P. 26(f)(2). Notably, Federal Rule of Civil Procedure 37(f) provides, "If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure."

The parties' discovery planning conferral must also adhere to Local Rule 26.2 (pertaining to ESI discovery) of the Local Rules of the United States District Court for the Western District of Pennsylvania. This District's Local Rule 26.2 imposes upon the attorneys a duty to meet and confer "[a]t the Fed. R. Civ. P. 26(f) conference, and upon a later request for discovery of ESI, . . . and attempt to agree, on the discovery of ESI." LCvR 26.2.D. Prior to such conferral, counsel is dutybound to investigate their clients' ESI systems to understand how such ESI is stored; how it

---

both," and "[t]he sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

has been or can be preserved, accessed, retrieved, and produced; and any other issues to be discussed at the Rule 26(f) conference. *See* LCvR 26.2.A.1. The attorneys must also identify a person or persons with knowledge about their client's ESI, with "the ability to facilitate, through counsel, preservation and discovery of ESI." LCvR 26.2.A.2.[3] Local Rule 26.2.C provides additional resources to aid counsel with these investigatory and conferral obligations, including a "Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information" found in Appendix LCvR 26.2.C-CHECKLIST, and "Guidelines for the Discovery of Electronically Stored Information" set forth in Appendix LCvR 26.2.C-GUIDELINES. Additionally, Local Rule 26.2.E provides templates for preparing a Rule 26(f) Report at Appendix LCvR 16.1.A, as well as a template "Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation" at Appendix LCvR 26.2.E-MODEL ORDER.

Finally, parties must also adhere to the presiding judicial officer's published Practices and Procedures[4] and related orders. Pertinent here are Sections II.B.2 and II.C.1 of this Court's Practices and Procedures. Section II.B.2 requires the parties to jointly contact chambers to schedule an informal status conference in the event a discovery dispute cannot be resolved after the parties have conferred in good faith; and no discovery motions are to be filed until after the conference except in cases of emergency as certified by counsel. Additionally, Section II.C.1 requires motions (both discovery and otherwise) to be accompanied by a certification that the

---

[3] Separately, Local Rule 26.2.B provides, "In order to facilitate communication and cooperation between the parties and the Court, each party shall, if deemed necessary by agreement or by the Court, designate a single resource person through whom all issues relating to the preservation and production of ESI should be addressed." LCvR 26.2.B. Comment 1 to Local Rule 26.2.B provides, in pertinent part, "The resource person is permitted to, and, in fact, encouraged to, involve persons with technical expertise in these discussions, including the client, client's employee, or a third party. The resource person may be an individual party, a party's employee, a third party, or a party's attorney, and may be the same person referenced in LCvR 26.2.A.2."

[4] The Practices and Procedures of Judge W. Scott Hardy may be accessed on the Court's website at https://www.pawd.uscourts.gov/sites/pawd/files/Practices_Procedures_Judge_Hardy_10_21.pdf.

movant has discussed the matter with all other parties and to expressly indicate whether the opposing party consents to or opposes the motion and whether such party intends to file a response. Consistent with these provisions from the Court's Practices and Procedures, the Court's June 24, 2024, Case Management Order also provides, in pertinent part:

> In the event of a discovery dispute, lead counsel shall confer in person or by telephone, agree on the scope and nature of the dispute, and then contact chambers to request a telephonic status conference. No discovery motions are to be filed until after the conference except in cases of emergency as certified by counsel.

(Docket No. 21, ¶ 3). These obligations are consistent with Federal Rule of Civil Procedure 37, which requires certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery to obtain it without court action. *See* Fed. R. Civ. P. 37(a)(1), (d)(1)(B).

Rule 37 governs motions to compel discovery. The burden of establishing the relevance of discovery sought rests with the moving party:

> When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1). If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019) (quoting *Wright v. City of Philadelphia*, [Civ. Action No. 16-5020,] 2017 WL 1541516, at *1 (E.D. Pa. Apr. 28, 2017)).

*Plump v. La Salle Univ.*, Civ. Action No. 19-cv-4579, 2020 WL 3250532, at *2 (E.D. Pa. June 15, 2020).

## II. **Attorney Ward's ESI Protocols and Discovery Requests**

From the inception of this action, Counsel for the parties could not agree on the scope and methodology for ESI discovery. Counsel participated in a Rule 26(f) conference in this case on

June 14, 2024. (Docket No. 17 at 2). Beforehand,[5] on April 3, 2024, Attorney Ward served upon Defense Counsel "Plaintiff's First F.R.C.P. 34(a) Request for ESI Search" (referred to herein as "ESI Requests") (Docket No. 28-2). Contained within these ESI Requests[6] are 25 separate requests for production of documents, including, relevant here, Request No. 1, which directs Defendants to identify and describe their ESI "sources and custodians," including "all HR staff employed during the relevant period[7] [and] any attorneys that advised defendants prior to [Ms. Wilbert's] termination . . ." and an "agreed upon 'e-discovery resource person' [to] conduct an electronic forensic search, including deleted files" for nearly 60 itemized search terms plus their modifying iterations (*e.g.*, "litigat!" would include litigate, litigation, litigating, etc.). (Docket No. 28-2 at 12-13 & n.1). Among these search terms are many crude, vulgar, and sexual words that seemingly have no relationship to the pregnancy-based discrimination, retaliation, and statutory-leave-denial claims advanced with specificity[8] in Ms. Wilbert's Complaint. (*See id.* at 12-13). Request No. 1 further directs Defendants to produce the results of this electronic forensic search in "searchable PDF format." (*Id.* at 13).

---

[5]   Notably, Rule 26(d)(1) prohibits a party from seeking discovery before the parties have conferred as required by Rule 26(f). Attorney Ward stayed within the technical bounds of *this* rule because Rule 26(d)(2) permits parties to propound requests under Rule 34 earlier, though those requests are not deemed served until the date of the Rule 26(f) conference and not the earlier date of actual service.

[6]   These ESI Requests also contain many requests for production of likely non-electronic documents such as employment policies and Ms. Wilbert's personnel file, along with requests for identification of experts and their expert reports. (Docket No. 28-2). Relevant here are those portions of the requests relating to electronically stored information.

[7]   The ESI Requests seek to define the relevant period as July 1, 2021, to present ("meaning the date that the ESI resource person begins the technologically assisted search"). (Document No. 28-2 at 13). Attorney Ward now asserts that the relevant period is September 15, 2018, (which is more than two years before Ms. Wilbert began her employment at Pyramid) through the date of the ESI search. (Docket Nos. 1, ¶ 6; 28, ¶ 29).

[8]   Notably, Ms. Wilbert avers in Paragraph 15 and its seventeen subparagraphs at (a) – (q) of her Complaint a litany of offensive and discriminatory statements that Mr. Baily allegedly made to her because of her pregnancy. (Docket No. 1, ¶ 15).

In conjunction with these ESI Requests, Attorney Ward supplied Defense Counsel with a 30-page document entitled "J.P. WARD & ASSOCIATES, LLC – MANDATORY RULE 26(F)(2), (3) ESI DISCOVERY PLAN FOR USE IN EMPLOYMENT LAW CASES" ("Ward Firm ESI Plan") (Docket No. 30-2). Attorney Ward represents that this document outlines his law firm's "*standard procedures* for the Rule 26(f) conference and subsequent proceedings." (Docket No. 17 (Rule 26(f) Report), ¶ 11(b)(ii) (emphasis added)). Use of the word "mandatory" in the title of this 30-page tome reinforces Attorney Ward's intended use of this document to impose extensive ESI protocol requirements unilaterally on opposing counsel and their clients in employment cases generally. (Docket No. 30-2 at 1). While some features of this document *may* prove helpful to counsel when conferring to develop an ESI discovery plan, it far exceeds the scope and depth of items addressed in this District's suggested Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information found in Appendix LCvR 26.2.C-CHECKLIST and related Guidelines for the Discovery of Electronically Stored Information found in Appendix LCvR 26.2.C-GUIDELINES, and it also misstates or overstates several provisions of the applicable rules and standards in this regard. Furthermore, in the Court's estimation, the Ward Firm ESI Plan frames certain conferral elements in an argumentative and non-negotiable manner, suggesting an unwillingness to modify it during the required conferral process.

Given the breadth and scope of Attorney Ward's ESI Requests and the content and tone of the Ward Firm ESI Plan, it is not surprising that Defense Counsel objected to the ESI protocol that Attorney Ward was demanding be used in this case. First, Attorney Ward was insisting that Defendants not be permitted to use their own internal IT personnel to perform e-discovery collection in-house, and that Defendants instead be required to hire an independent vendor[9] who

---

[9] The Ward Firm ESI Plan insists that Defense Counsel "certify" that they "designated a qualified 'e-discovery resource person' that possesses the skill, technology, and staffing required to conduct the ESI 'keyword search' in this

8

must deploy "sophisticated e-discovery software" for such purposes. (Docket No. 17 at 5). Second, Attorney Ward was insisting on a broad swath of custodians to be searched, including Pyramid's attorneys and its entire HR staff regardless of involvement or relationship with Ms. Wilbert's employment.[10] Third, Attorney Ward was insisting that this outside IT vendor run the keyword searches set forth in the ESI Requests using technology-assisted searches and then produce a "hit report" or "hit list" for each custodian and keyword before addressing any objections.[11] (Docket No. 30-2 at 7). Fourth, Attorney Ward was insisting on keyword searches

---

case," which includes imaging cell phone data, storing cell phone data, imaging or otherwise searching email, cloud space, or server data, and utilizing appropriate e-discovery software. (Docket No. 30-2 at 7). While Attorney Ward does not continue to press this issue and seems to be accepting of Defendants' internal IT person, it bears noting that the Ward Firm ESI Plan is wrong to insist that opposing counsel designate an external IT vendor to effectuate ESI searches and production therefrom in every case generally or in this case in particular. Nothing in the applicable procedural rules or extant law requires a party *in every case* to designate an independent IT vendor to handle that party's ESI discovery matters, nor is there any indication in the record that doing so in this case would be necessary or justified. This District's Local Rule 26.2.A merely requires counsel to investigate the client's ESI such as email and other electronic documents and digital systems prior to the Rule 26(f) conference "in order to understand how such ESI is stored; how it has been or can be preserved, accessed, retrieved, and produced . . . ." LCvR 26.2.A. Counsel is also required to "[i]dentify a person or persons with knowledge about the client's ESI, with the ability to facilitate, *through counsel*, preservation and discovery of ESI." LCvR 26.2.A.2 (emphasis added). Moreover, Local Rule 26.2.B provides a mechanism to designate a "single resource person through whom all issues relating to the preservation and production of ESI should be addressed" in order to facilitate communication and cooperation between the parties and the Court "if deemed necessary by agreement or by the Court." LCvR 26.2.B. Importantly, this subpart B is not applicable here because it is invoked to designate such single resource person (meaning one person serving in this role for the collective benefit of all parties and the Court) only *by agreement of the parties* or *by the Court*, and no such agreement has been entered into here nor has the Court directed such designation. Even so, Comment 1 to this subpart B expressly provides that any such agreed upon or ordered resource person "may be an individual party, a party's employee, a third party, or a party's attorney, and may be the same person referenced in Local Rule 26.2.A.2 (counsel's identified person(s) with knowledge of the client's ESI). Notwithstanding these Local Rules, Attorney Ward's ESI Requests and accompanying Ward Firm ESI Plan insisted on Defendants using an outsourced IT vendor with credentials satisfactory to Attorney Ward. Accordingly, it was improper for Attorney Ward to insist categorically that Defense Counsel identify and retain an independent IT vendor (whether satisfactory to him or not) to perform Defendants' ESI preservation, searches, retrieval, and production.

[10]   The Ward Firm ESI Plan insists that Defense Counsel identify, among their clients' "custodians and sources of ESI," the names of attorneys who provided advice before terminating a plaintiff's employment and further demands "company" and "personal" cell phone numbers of those attorneys. (Docket No. 30-2 at 5-6). The Ward Firm ESI Plan similarly demands such information for "[e]very HR person on Staff at Time of Incident(s)." (*Id.* at 6).

[11]   According to the Ward Firm ESI Plan, an e-discovery resource person:

> . . . must be able to create a reliable and accurate 'hit report' which detailed descriptions of search terms, and hits associate[d] with search terms. (Without the ability to generate a hit report, the E-discovery resource person is woefully unqualified. Without a hit report, generated by software, there is no accepted methodology to certify that a competent search was done. Furthermore, there is no possibility to reasonably meet and confer on any objections that

for an overly broad time period and for a broad array of vulgar, obscene, and profane terms which do not relate to the claims in Ms. Wilbert's Complaint.  Fifth, Attorney Ward was insisting that these extensive ESI searches and the production generated therefrom be completed before the parties' mediation.  (*See* Docket No. 17).

Counsels' ESI disagreements were summarized in their Rule 26(f) Report. (Docket No. 17).  These disagreements were also discussed extensively with the Court at its Rule 16 Initial Case Management Conference ("ICMC").  *See* Fed. R. Civ. P. 16; LCvR 16.1.  At that time, the Court expressed disapproval of Attorney Ward's efforts to include attorneys and all HR staff among the designated custodians, stated that the temporal scope of the case seemingly was confined to an approximate two-month window, and noted that Attorney Ward's position on ESI discovery was backwards in that relevance should be determined first, to the extent practicable, rather than after extensive irrelevant searches have been performed.  (Docket No. 18).  The Court further directed counsel to confer meaningfully on all disputed discovery matters, particularly custodians and search terms, to narrow or resolve those disagreements.  (*See id.*).  That same day, the Court issued its Case Management Order setting the fact discovery deadline for November 21, 2024.  (Docket No. 21 at 2).  Five months later, the parties jointly moved[12] to extend that discovery deadline, stating that they needed an additional 90 days for depositions and to address "ancillary

---

defense counsel may have, i.e., if defense counsel objects that a search term would generate overly broad results, then we must refer to a hit report, and if needed, then the parties can discuss generally accepted methods to reduce hits associated with a particular term(s)).

(Docket No. 30-2 at 7).

[12]    Defendants previously moved for additional time to respond to Plaintiff's First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents to Defendants, which contained 85 requests for admission and 21 interrogatories (Docket No. 28-3), noting in that motion that Attorney Ward had not responded to several phone calls and emails about the extension request but did reply to an email that the parties had not yet agreed upon custodians for ESI discovery. (Docket No. 22, ¶¶ 4-5).  The Court granted that motion (Docket No. 23).

10

discovery issues that may arise." (Docket No. 25, ¶ 4). No mention was made of ongoing ESI disagreements. (*See id.*). The Court granted this motion on November 20, 2024, re-setting the close of discovery for February 19, 2025. (Docket No. 26). Then, merely five days later, on November 25, 2024, the Court received a jointly submitted informal letter from counsel outlining specified discovery disputes pursuant to Section II.B of this Court's Practices and Procedures, involving (i) the identification of relevant sources and custodians; (ii) search term dispute; (iii) the production of a hit report; and (iv) temporal scope of the keyword searches. (Docket No. 28-7).[13]

The jointly submitted correspondence prompted the Court to issue a detailed Order on November 27, 2024, granting Attorney Ward leave to file a motion to compel:

> ORDER OF COURT: Upon receipt of the parties' jointly submitted informal correspondence, dated 11/25/2024, outlining specified discovery disputes in furtherance of Section II. B. of the Court's Practices and Procedures, Plaintiff is hereby granted leave to file an omnibus motion to compel discovery and supporting brief pursuant to Fed R. Civ. P. 37 addressing only those matters identified in the parties' correspondence to the Court and which have been thoroughly and substantively conferred upon in relation to *each factual and legal issue in dispute* prior to filing such motion. The motion shall be accompanied by a certificate of conferral. Any such motion and brief shall be well-supported in all respects, both with supporting legal citations fairly and accurately represented as to <u>each</u> legal assertion made, and with affidavits or unsworn declarations under penalty of perjury pursuant to 28 U.S.C. Sec. 1746, along with pertinent correspondence and documents, substantiating <u>each</u> factual assertion made. Additionally, the motion/brief shall specify with particularity the relevance of each discovery item that is a subject of the motion. The motion shall be accompanied by a proposed order that is specific and particularized as to each item of relief requested. Defendant shall file a response that is well-supported in all respects and equivalent to the requirements for Plaintiff's motion as specified in this Order and shall be accompanied by a proposed order that is specific and particularized. All parties' filings shall comply in all respects with all applicable provisions of the Federal Rules of Civil Procedure, the Local Rules of the Western District of Pennsylvania, and this Judicial Officer's published Practices and Procedures. Plaintiff's motion, brief, and supporting materials shall be filed no later than 12/6/2024, and Defendant's response shall be filed no later than 12/16/2024.

---

[13] Counsels' jointly submitted correspondence also addressed a dispute involving "pattern and comparator evidence," but the parties have since resolved that matter, and it is not part of the motion presently before the Court. (Docket Nos. 28, ¶ 10; 28-7 at 7).

> No other briefing shall be permitted unless directed by the Court. Each party's brief shall not exceed ten pages. Nothing in this Order shall operate to stay discovery generally and the pending discovery completion date of 2/19/2025 remains in place and will not be enlarged for matters that could have been accomplished regardless of a ruling on the anticipated motion contemplated by this Order.

(Docket No. 27 (emphasis in original)). Attorney Ward filed his Motion to Compel on December 6, 2024, along with a "Certificate of Meet and Confer" that states, "Undersigned counsel certify that all Parties, by and through Counsel, have met and conferred to reach agreement on the issue raised by this discovery motion as required by Fed. R. Civ. P. 37(a)(1), Local Rule and this Court's Practices and Procedures." (Docket No. 28-9).

As a threshold matter, Attorney Ward's Motion to Compel fails to satisfy the requirements of the Court's November 27, 2024, Order in certain material respects. Notably absent from Attorney Ward's motion are affidavits or unsworn declarations "substantiating each factual assertion made," nor does his motion "specify with particularity the relevance of each discovery item that is a subject of the motion" – importantly, here, for each custodian and for each search term – as expressly required by the Court's Order. (Docket No. 27). Even so, the Court finds Attorney Ward's motion lacking on the merits, too.

First, Attorney Ward impermissibly insists that Defendants search ESI from an overly broad and irrelevant set of custodians, particularly their attorneys and all HR staff regardless of their involvement in Ms. Wilbert's employment and termination therefrom. Defense Counsel attempted to confer with Attorney Ward about their disagreement concerning relevant custodians, agreeing upon certain custodians while rejecting others, and offering to further confer, yet Attorney Ward ignored or otherwise imposed egregious barriers to doing so. (Docket No. 28-5). Attorney Ward's motion has not even attempted to explain the relevance *for each* of his proposed custodians and thus fails to satisfy his burden of establishing relevance here. *See, e.g., Wang v. University of*

12

*Pittsburgh*, No. 2:20-cv-1952, 2023 WL 5214893, at *3-5 (W.D. Pa. Aug. 15, 2023) (finding that ordering additional e-discovery of two of three potential data custodians was not relevant or proportional to the needs of the case, after evaluating the parties' arguments as to each data custodian in question), *adopting and modifying in part* Special Master's Report and Recommendation, 2023 WL 5944114 (W.D. Pa. May 22, 2023); *Arconic Inc. v. Novelis Inc.*, Civ. Action No. 17-1434, 2020 WL 1698389, at *2 (Apr. 8, 2020) (finding, in considering disputes regarding document custodians, that the plaintiff had failed to convince the court that a certain additional document custodian was necessary when another custodian, who was appropriate for the documents at issue, was already in place in the case), *overruling objections to* Special Master's Report and Recommendation, 2020 WL 9459169 (W.D. Pa. Feb. 14, 2020).

Second, Attorney Ward impermissibly insists that Defendants run so-called "hit reports" on all of his search terms before assessing whether each of those search terms are relevant. As the Court informed Attorney Ward at the Rule 16 ICMC, his insistence on doing so, in a simple, non-document-intensive employment discrimination case such as Ms. Wilbert's case, seems backwards and inappropriate. Attorney Ward has chosen to ignore the Court's observations in this regard and persists in his insistence that Defendants expend the time, effort, and resources to search the computers and phones of a wide swath of custodians (relevant or not) for a wide range of search terms (relevant or not), and for an overly broad time period (relevant or not), relying instead on the apparent authority of his own Ward Firm ESI Plan that emphatically though errantly states:

> Without a hit report, generated by software, there is no accepted methodology to certify that a competent search was done. Furthermore, *there is no possibility to reasonably meet and confer on any objections that defense counsel may have*, i.e., if defense counsel objects that a search term would generate overly broad results, then we must refer to a hit report . . . .

13

(Docket No. 30-2 at 7 (emphasis added)). Attorney Ward's position in this regard is wrong. *See, e.g., O'Donnell/Salvatori Inc. v. Microsoft Corp.*, Case No. C20-882-MLP, 339 F.R.D. 275, 276-77 (W.D. Wash. 2021) (holding that a party's agreement to run search terms does not waive its right to review the resulting documents for relevance, stating that "the courts that have addressed [this issue] have almost uniformly found that a relevance review, and the withholding of irrelevant documents, is appropriate" (citing *FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*, Case No. 15cv1879-BEN, 2016 WL 6522807 at *8 (S.D. Cal. Nov. 3, 2016) (denying motion to compel production of all documents that "hit" on the parties' ESI search terms, determining that relevance and over breadth objections were not waived and that the agreement to run a search using agreed upon terms does not constitute acquiescence to produce all resulting documents))); *see also Singleton v. Mazhari*, Civ. Action No. 22-CV-2554-GLR, 2024 WL 1140691, at *3 (D. Md. Mar. 14, 2024) (noting that "hits on a given search term in a given document for a particular custodian, including during the time frames [identified], does not necessarily mean the document is discoverable"); *Palmer v. Cognizant Tech. Sols. Corp.*, Case No. 17-6848-DMG, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) ("The Court will not compel defendants to produce any document simply because it contains a search term whether or not it is responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action.").

Third, Attorney Ward has not established that his temporal search period and many of his search terms are relevant. Attorney Ward insists that Defendants conduct an electronic forensic search, including deleted files for nearly 60 itemized search terms plus their modifying iterations (*e.g.*, "litigat!" would include litigate, litigation, litigating, etc.). (Docket No. 28-2 at 12). Although Ms. Wilbert's highly detailed, 179-paragraph Complaint avers a litany of specific offensive, discriminatory, and harassing statements that her direct supervisor, Mr. Bailey,

14

allegedly made to her because of her pregnancy, such as "Are you really going to be *that* kind of a mother and make your older kids babysit for you while you work?" and "If you don't get an abortion, your life is over,"[14] many of the search terms Attorney Ward insists upon are crude, vulgar, and sexual words[15] that seemingly have no relationship to the pregnancy-based discrimination and harassment, retaliation, and statutory-leave-denial claims advanced with specificity in Ms. Wilbert's Complaint. Attorney Ward offers no explanation based upon reason or evidence elicited during discovery thus far to support searching for these terms, and instead creates the impression that he simply seeks to harass Defendants, needlessly increase the costs of litigation, and/or undertake an unsubstantiated fishing expedition. Defense Counsel attempted to confer with Attorney Ward about their disagreement on these search terms, but, again, Attorney Ward ignored or otherwise imposed barriers to doing so. (Docket No. 28-5). Nowhere in the record can the Court discern how the search terms that Defendants' Counsel objects to are in any way relevant to Ms. Wilbert's pregnancy-related claims, nor has Attorney Ward articulated any theory of relevance, much less a credible or supportable one, for those search terms, despite carrying the burden for doing so.

Likewise, Attorney Ward proffers no credible explanation for why emails and texts sent or received prior to Ms. Wilbert's pregnancy should be included in the search and production of ESI in this case. The Court has reason to know from the face of Ms. Wilbert's Complaint that she began working at Pyramid on November 3, 2020, and that she knew her supervisor, Mr. Bailey, even earlier, but that the incidents leading to her claims only began when Mr. Bailey became aware of her pregnancy in April 2023 and first made pregnancy-related discriminatory comments to her

---

[14]     Docket No. 1, ¶ 15(a)-(q).

[15]     Attorney Ward's search terms include: "fuck!," "bitch!," "cunt," "slut," "whore," "pussy," "blow job," "ass," "cock," and "dick." (Docket Nos. 28-2 at 12; 28, ¶ 15).

15

on or about April 10, 2023. (Docket No. 1, ¶¶ 6, 11 – 15). While electronic communications occurring prior to and after discriminatory and harassing incidents *may* be relevant in some contexts, Attorney Ward offers no such explanation of relevance here to meet his burden to justify conducting searches for communications, containing each specified search term, that took place before the alleged pregnancy discrimination and harassment began, much less before Ms. Wilbert's employment with Pyramid commenced. The Court's November 27, 2024, Order (Docket No. 27) provided Attorney Ward with instructions for doing so, but Attorney Ward failed to comply therewith and thus his motion does not satisfy his burden under Rule 37.

The Court reaches the foregoing conclusions based upon its consideration of basic relevance principles and its scrutiny of Attorney Ward's unsupported motion. However, the Court is also of the view that Attorney Ward's self-proclaimed "mandatory" approach to ESI discovery in employment cases not only contravenes several provisions of the Federal Rules of Civil Procedure and this District's Local Rules, but Attorney Ward's unilateral imposition of such ESI protocols in all such cases also defies the requirement that even relevant discovery must be:

> . . . proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). It is evident that, in this case, Attorney Ward has ignored his duty to refrain from discovery efforts that are unreasonable or unduly burdensome or expensive in the context of these proportionality factors. *See* 26(g)(1)(B)(iii) and Guideline 1.03 of LCvR 26.2.C (Appendix LCvR 26.2.C-GUIDELINES).

### III. **Attorney Ward's Conferral Behavior**

As set forth at length above, counsel have mutual obligations to confer with each other concerning discovery generally, and even more so for ESI, beginning with their Rule 26(f) conference. This obligation remains whenever disputes arise, or when discovery motions are anticipated or threatened. Here, Attorney Ward's refrain that Defense Counsel refused to confer rings hollow and reflects more on Attorney Ward's failings in this regard. First, it is not appropriate to insist on "mandatory" ESI protocols and related discovery requests (especially ones not supported by applicable court rules and controlling decisional authority) and deem any objection or disagreement to constitute a failure to confer. Nor is it proper to insist that opposing counsel hire an outside IT vendor and effectuate ESI searches using specified search software (in every case) and refuse to confer over objections and other concerns unless these demands are met. Yet, that is exactly what Attorney Ward did in this case. The conferral obligation is not a bargaining chip to be offered in exchange for a concession on a disputed discovery process or requested item. Conferral is expected for all discovery planning and dispute resolution and is a precondition to seeking court intervention. A party may also not impose unreasonable conditions or barriers on their willingness to meet and confer. Here, Defense Counsel contends that Attorney Ward insisted that he would only meet in person to confer if Defense Counsel acquiesced to his demand that such meeting be recorded. (Docket No. 28-5). Such obdurate behavior in this case lacks justification, defies the bounds of expected professional behavior, and was seemingly deployed to harass Defense Counsel and thwart any meaningful and constructive attempts at resolving the parties' disputes. Defense Counsel reasonably refused to meet in person under Attorney Ward's conditions, and nonetheless continued conferral efforts through correspondence dated October 2, 2024, agreeing with certain search terms, etc., and inviting further conferral. (*See*

*id*.). Receiving no response to that letter, Defense Counsel sent Attorney Ward an email two weeks later, on October 16, 2024, informing him that Defendants would apply the search terms and custodians set forth in the earlier letter. (Docket No. 30-3). Defense Counsel avers that Attorney Ward responded to this email, "stating that Defense Counsel should not initiate the searches because it would be a waste of time and a motion to compel was forthcoming." (Docket No. 30, ¶ 4).

Despite the foregoing, Attorney Ward affixed to his instant Motion to Compel a signed "Certificate of Meet and Confer." (Docket No. 28-9). Federal Rule of Civil Procedure 37(a) provides, in pertinent part, that when a party moves for an order compelling discovery, the motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). In the Court's estimation, Attorney Ward's conduct here did not satisfy his obligation to confer in good faith, thus putting the veracity of his certification in doubt.

Consequently, the Court is ordering Attorney Ward to show cause why sanctions should not be imposed upon him in his personal capacity as well as upon his law firm, J.P. Ward & Associates, LLC, for:

(i) Failing to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f) and all related Court rules; and

(ii) Misrepresenting to the Court that he has satisfied his conferral obligations in good faith before filing the Motion to Compel as required by Rule 37.

## IV. Conclusion

For the foregoing reasons, Plaintiff Lisa Wilbert's Motion to Compel (Docket No. 28), filed by Attorney Ward, will be DENIED.  Further, the Court will ORDER Attorney Ward and his law firm, J.P. Ward & Associates, LLC, to SHOW CAUSE why sanctions should not be imposed on him, it, or them, jointly and severally.

                                                  /s/ *W. Scott Hardy*
                                                  W. Scott Hardy
                                                  United States District Judge

Dated:  March 20, 2025

cc/ecf:  All Counsel of Record